# EXHIBIT A

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY

**SEARCH WARRANT**

IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County, Delaware. The premises is further described as a trailer located on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation, white front door with the numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS, OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF DELAWARE.
THE STATE OF DELAWARE TO: Task Force Officer/Detective Ronald A. Marzec
WITH THE ASSISTANCE OF ANY LAW ENFORCEMENT OFFICER OR ANY NECESSARY PERSON.

**GREETINGS:**
Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied that there is probable cause to believe that certain property, namely:
(See Exhibit "A")
is being concealed on the person, vehicle and/or property known as:
Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County, Delaware. The premises is further described as a trailer located on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation, white front door with the numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS, OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF DELAWARE, described in the annexed affidavit and application or complaint;
  **NOW THEREFORE, YOU ARE HEREBY COMMANDED** within ten (10) days of the date hereof to search the above named person, vehicle and premises or place for the property specified in the annexed affidavit and application, and to search any occupant or occupants found in the house, place and conveyance above named for such property, serving this warrant and making the search in the daytime, and, if the property papers, articles or things, or any part thereof, be found there, to seize it, prepare a written inventory of the property seized and to return a copy of the inventory and this warrant to me forthwith and the person and/or persons in whose custody or possession, the property was found to be dealt with according to the law.

DATED the ___7___ day of September, A.D. 2005.

_____

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY

AFFIDAVIT AND APPLICATION
FOR SEARCH WARRANT

**IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980**
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County, Delaware. The premises is further described as a trailer located on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation, white front door with the numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS, OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF DELAWARE.



Be it remembered that on this 21 day of September, A.D. 2005, before me, personally appeared Detective / Task Force Officer Ronald A. Marzec, Delmar Police Department / United State's Department of Justice Drug Enforcement Administration, who being duly sworn depose and say that they have reason to believe and do believe that in the property of
**Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980**
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County, Delaware. The premises is further described as a trailer located on the West side of Greentop Road. The trailer is beige/tan with white trim, a white foundation, white front door with the numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS, OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF DELAWARE, there has been and/or there is now located and/or concealed certain property in said house, place, conveyance, and/or on the person/persons or occupants thereof, consisting of property, papers, articles or things which are instruments of a criminal offense, and/or obtained in the commission of a crime, and/or designated to be used in the commission of a crime and not reasonably calculated to be used for any other purpose and/or the possession of which is unlawful and, in particular:
(See Exhibit "A")
Which said property, papers, articles or things were, are or will be possessed and/or used in violation of Title 16, Chapter 4751 thru 4755;

PROBABLE CAUSE

And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exists area as follows:

1. That your affiant is Detective / Task Force Officer Ronald A. Marzec who has been employed by the Delmar Police Department since January 1994. Your affiant is currently assigned to the United State's Department of Justice Drug Enforcement Administration Drug Task Force. Your affiant's duties in this capacity include the investigation and enforcement of illegal drug and money laundering violations. Your affiant graduated from the Eastern Shore Criminal Justice Academy where your affiant received 647 hours of training, which included training in the detection and recognition of controlled dangerous substances. Your affiant received updated training on an annual basis in the areas of controlled dangerous substance violation, investigations and arrests. Your affiant has authored in excess of fifty search warrants and has assisted in making in excess of 100 arrests where controlled dangerous substances were seized.
2. During the month of May, 2005, your affiant received information from several law enforcement agencies about a B/M named Steve HICKMAN who was distributing cocaine in the Sussex County, Delaware area. The information advised that HICKMAN lists his address through the Delaware Department of Motor vehicles as residing in Dagsboro, Delaware although HICKAMN actually resided on Greentop Road Ellendale, Delaware.
3. During the month of May, 2005 your affiant met with a confidential source, hereinafter referred to as "A". "A" has been known to law enforcement for several years. During this time, "A" has related information to law enforcement that has resulted in arrests and the seizure of controlled substances. "A" has never provided information to law enforcement proven to be false. "A" advised your affiant that "A" was familiar with a black male known to "A" as Steve HICKMAN, ("A" also knew HICKMAN by the nickname LITTLEMAN) who was involved in a cocaine distribution organization in the Sussex County, Delaware area. "A" advised your affiant that HICKMAN resides on Greentop Road Ellendale, Delaware with his girlfriend (Unknown name). "A" stated that HICKMAN sells cocaine from his residence on Greentop Road and keeps proceeds from sales of drugs at his Greentop Road residence. "A" advised that HICKMAN departs his residence around lunch time and travels to a trailer park located south of Ellendale, Delaware known to "A" as "the hole". "A" stated that HICKMAN travels to a trailer located in the rear of the trailer park where HICKMAN utilizes a trailer as a packaging/sale house. "A" advised that HICKMAN will arrive around lunch time and remain at the location where HICKMAN will sell cocaine to his customers. "A" stated that HICKMAN will travel from this location once or twice a week and purchase cocaine from his source and return to his packaging/sale house where HICKMAN will cook the powder cocaine into crack cocaine. HICKMAN will take the crack cocaine and divide the crack cocaine into several packages. HICKMAN will then take the packages and hide the packages of cocaine in several locations along the roadside in remote country areas around Ellendale, Delaware. "A" stated that HICKMAN divides the cocaine into smaller packages to avoid being caught by law enforcement with larger amounts of cocaine that would carry enhanced penalties. "A" stated that a black male known to "A" as LEE LEWIS is related to HICKMAN and assists HICKMAN with the distribution

organization. "A" stated that when LEE and HICKMAN travel out of the hole together, they are usually traveling to HICKMAN's source to obtain cocaine. "A" advised that HICKMAN travels back to his Greentop Road residence at the end of the night when HICKMAN is finished selling cocaine for the day. "A" stated that HICKMAN takes his proceeds from the sale of cocaine back to his Greentop residence and keeps his money secreted within the residence. "A" advised your affiant that HICKMAN owns several properties around the Ellendale area that HICKMAN has bragged about purchasing the properties with proceeds from drug transactions.

4. During the month of June, 2005, your affiant and "A" traveled to Greentop Road Ellendale, Delaware where "A" pointed to two trailers located on the West side of Greentop Road. "A" advised your affiant that HICKMAN resided in the single wide trailer at the present time but was in the process of moving into the tan double wide located next to the singlewide trailer. "A" and your affiant traveled to a trailer park south of the town of Ellendale. "A" pointed to two trailers that were located on the north east dead end area of the trailer park. "A" advised your affiant that the two trailers were operated by HICKMAN as the packaging/sales house.

5. During the month of May, 2005 your affiant queried the Delaware Criminal Justice Information System in reference to Steve HICKMAN. Your affiant obtained a photo of HICKMAN and your affiant learned the following:

    A: HICKMAN was arrested on 11-22-1996 by Delaware State Police for Trafficking in Cocaine.

6. During the month of June, 2005 your affiant and members of Law Enforcement conducted surveillance of HICKMAN. Surveillance was established in the area of New Hope Road Ellendale, Delaware (A.K.A. The Hole). Law enforcement officers observed HICKMAN arrive at his packaging/sales trailers. Shortly after HICKMAN's arrival Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs.

7. On June 23, 2005 your affiant and members of law enforcement established surveillance of HICKMAN at his sales trailer. Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed HICKMAN enter an old pick-up truck. Law Enforcement Officers observed HICKMAN travel to a remote location West of Ellendale, Delaware. Officers observed HICKMAN park on the side of a road and appeared to be holding tissue paper in his hand and standing against a road sign. After a period of a few minutes, HICKMAN entered his pick-up truck and departed the area. Law Enforcement Officers searched the area where HICKMAN stopped and located a plastic bag wrapped in tissue secreted in the traffic sign. Your affiant observed the package to contain approximately nine grams of cocaine packaged in several plastic bags.

8. Your affiant sent the cocaine recovered from the street sign to the Drug Enforcement Administration for analysis. A certified chemist tested the substance and determined the substance to be cocaine.

9. On June 30, 2005, your affiant and members of law enforcement conducted surveillance of HICKMAN at the Greentop Road area and observed HICKMAN depart his Greentop Road residence. HICKMAN traveled to his packaging/sales trailer located in "The Hole". Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicles remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed a black male identified as LEE LEWIS arrive at HICKMANS packaging/sales trailer. Law Enforcement Officers observed HICKMAN and LEWIS enter a Cadillac with another black male. Law Enforcement Officers observed HICKMAN then travel to a residence located north of Ellendale and meet with a black male subject. Law Enforcement Officers then observed HICKMAN, LEWIS and the unknown B/M travel to HICKMAN's residence located on Greentop Road, known as 9008 Green Top Road, where HICKMAN was observed entering the residence alone. HICKMAN departed the residence and re-entered the Cadillac with LEWIS and the third B/M. Law Enforcement Officers observed the Cadillac travel to a shopping plaza located in Georgetown, Delaware where your affiant observed the Cadillac park and appear to be waiting for someone. Law Enforcement Officers observed a brown pick-up truck arrive after a period of time. HICKMAN was observed exiting his Cadillac and opening the passenger door of the pick-up truck. HICKMAN was observed handing the sole occupant of the pick-up an object and the driver in turn handed HICKMAN a package. HICKMAN re-entered the Cadillac and after a short period of time the Cadillac was observed departing the parking lot. Your affiant requested Georgetown Police Department stop the Cadillac. Law Enforcement Officers observed the Cadillac travel north on Rt 113 and observed a marked Georgetown Police vehicle activate their emergency equipment. Law Enforcement Officers observed the Cadillac fail to yield and a pursuit ensued. The Cadillac eventually came to a stop on Donavan Road Georgetown, Delaware and HICKMAN elited from the vehicle. HICKMAN was caught and arrested after a brief foot pursuit. During the foot pursuit, officers observed HICKMAN through a bag. Law Enforcement Officers recovered the bag and located over 70 grams of suspected cocaine. Your affiant interviewed HICKMAN and learned HICKMAN was not employed.

10. Your affiant field tested the suspected cocaine utilizing a reagent field test kit for the presumptive identification of controlled substances. Your affiant noted a positive result for the presence of cocaine, schedule II, Controlled Substance.

11. During the month of July, 2005, your affiant conducted surveillance of HICKMAN's residence on Greentop Road. Your affiant observed HICKMAN at the residence.

12. During the month of August, 2005, "A" advised your affiant that HICKMAN had posted bail and was released from jail. "A" further related to your affiant that HICKMAN was still involved in the distribution of cocaine. "A" stated that HICKMAN had changed the way he distributed cocaine. "A" stated HICKMAN no longer utilized his packaging/sales trailer in "The Hole" but now HICKMAN was selling cocaine from his Greentop Road residence. "A" advised that HICKMAN moved into the double wide trailer located at the same location. "A" stated that HICKMAN continued to store proceeds from his drug sales inside his Green Top Road residence.

13. During the month of September, 2005, "A" advised your affiant that HICKMAN was still distributing cocaine from his Greentop Road residence. "A" advised that HICKMAN had invested proceeds from drug sales in other properties/real estate in the Greentop Road and Ellendale, Delaware area. "A" further advised HICKMAN had made purchases of expensive items for his residence at Greentop Road to include a gazebo type addition and deck that HICKMAN was in the process of adding to his double wide trailer on Greentop Road. "A" advised your affiant that HICKMAN was not employed and had no known source of employment other than selling cocaine.

14. During the week beginning September 14, 2005, Your affiant traveled to 9008 Greentop Road. Your affiant observed construction taking place in the rear of the residence. Your affiant observed what appeared to be a gazebo and decking being added to the residence. Your affiant also observed a pick-up truck operated by HICKMAN parked in the rear of the residence.

**WHEREFORE, THIS** AFFIANT PRAYS THAT A SEARCH WARRANT MAY BE ISSUED AUTHORIZING A SEARCH OF THE AFORESAID HOUSE, PLACE CONVEYANCE, PERSON OR PERSONS, OR OCCUPANTS IN THE MANNER PROVIDED BY LAW.

_____
AFFIANT

SWORN TO (OR AFFIRMED) AND SUBSCRIBED BEFORE ME THIS ___ DAY OF September, 2005.

_____
JUDGE

*To se'eh warrant In th matter of Atrop Hichman dated Sept 2/ 2005*

**EXHIBIT A** (Property to be seized)

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marihuana and other Controlled Dangerous Substances;

2. Papers, tickets, notes, receipts and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or store expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, related manuals used to generate, transfer, count, record and/or store information described in items 1, 2, 3 and 5 of this exhibit. Additionally, computer software, tapes, discs, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment;

5. United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

6. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

7. Address and/or telephone books, Rolodex indexes and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions and other individuals or business's with whom a financial relationship exists;

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to utility and telephone bills, canceled envelopes, rental purchase and or lease agreements and keys;

9. Firearms, ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons, and any records or receipts pertaining to firearms and ammunition;

10. Coca leaves, including cocaine and ecgonine and their salts, isomers, derivatives and the salts of isomers and derivatives, and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.